IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:12-251-JFA |
| ) | |
| v. ) | MEMORANDUM |
| ) | OPINION & ORDER |
| HAFAN ANTONIO RILEY ) | |
| _____ ) | |

This matter is before the court upon the defendant's *pro se* motion for compassionate release (ECF No. 251) pursuant to the First Step Act[1] and 18 U.S.C. § 3582(c)(1)(A). The defendant contends that his current medical conditions place him at a higher risk of becoming seriously ill from the COVID-19 virus. He also submits that he is the only living caretaker for his son whose mother died.

The government has responded and the defendant has replied thereto. In addition, the defendant has filed several supplements his original motion[2] as well as numerous letters to the court with regard to mitigating factors, including post-sentencing rehabilitation. The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the defendant. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[2] On January 8, 2021, the defendant filed a motion to supplement (ECF No. 277) with additional evidence. This court granted the motion, but a separate docket entry was not made of the supplement attached to his motion. The attachments to the motion have been considered by this court.

1

## I. STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), provides:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>   (i) extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

Before the passage of the First Step Act, the United States Sentencing Commission permitted a sentence to be modified due to the defendant's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. *See* U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing

Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reasons" other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. at n. 1 (D).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is as of now no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also*, *Kibble*, 992 F.3d at 331.

Nevertheless, § 1B1.13 provides a framework when evaluating a defendant's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A).

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have fully exhausted all of the administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf or the lapse of 30 days with no answer from the Warden after a request by the defendant, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).[3]

In his motion before this court, the defendant attests that he requested compassionate release pursuant to § 3582(c)(1)(A) due to his medical conditions, COVID-19, and issues relating to the care of his minor child, from the Warden on April 13, 2020, and such request was denied on April 30, 2020. The defendant appealed this decision, but his appeal was denied on July 16, 2020. In its first response in opposition (ECF No. 257), the government does not dispute that the defendant has satisfied the procedural requirements of § 3582(c)(1)(A). The government acknowledged that the defendant requested a sentence reduction from the Warden on April 13, 2020 and that the BOP denied his request after determining that the defendant was not terminally ill nor were his daily living activities limited.

---

[3] The defendant must exhaust his administrative remedies as defined in § 3582(c)(1)(A) before filing a motion for compassionate release in this court. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (finding that "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion"); *United States v. Williams*, No. CR JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020) (denying motion for reduction of sentence because defendant failed to exhaust his administrative remedies, but declining to decide whether exhaustion requirement is jurisdictional).

In his first supplement (ECF No. 269), the defendant suggests that he saved a fellow inmate's life and requests the court consider this fact as additional evidence in support of his motion for compassionate release. He reiterates that his medical conditions place him at an increased risk if he contracts COVID-19, that the pandemic is severe, and that he has exhibited heroic life saving efforts towards another inmate. The defendant further discusses his release plan and his accomplishments while at the BOP.

In his second supplement (ECF No. 272), the defendant provides the court with copies of his sealed medical records.

In his third supplement (ECF No. 277), the defendant submits additional evidence showing that he poses no public safety risk if released. He attaches as an exhibit his "Male Custody Classification Form" dated December 30, 2020 (ECF No. 277-1). He suggests that under the line marked "PUB SFTY", the response is "NONE" which shows that he is not a danger to the public if released. He notes that there is another spread of COVID-19 at FCI Butner. The defendant reiterates the fact that he has completed drug programs, obtained his GED, has kept a job, saved another inmate's life, and has been an advocate for law and order. He states that the Warden and Assistant Warden Captain Wright all believe that he is rehabilitated. He notes that he has only had one disciplinary infraction when he got in a fight with another inmate who assaulted him.

However, the government contends in it supplemental response (ECF No. 276) that the defendant has not exhausted his administrative remedies with regard to the defendant's

supplemental claim that he used heroic, life-saving efforts to save another inmate. The government suggests that the court has no authority to act on the "heroism" claim as the basis for his release. The government suggests that the court should deny the motion without prejudice because the defendant has not exhausted his administrative remedies on this one issue. The government attaches copies of the defendant's April 13, 2020 request to the warden, and the Warden's April 30, 2020 denial letter.

The court will construe the defendant's claim of heroism as a mitigating factor in support of the defendant's post-sentencing behavior, as opposed to a separate claim for relief that must be exhausted.

As it appears to this court that the defendant has fully exhausted his administrative remedies as to his original motion and supplements (ECF No. 251), the court will proceed to review the matter on the merits. Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

## II. DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has

7

a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. Under these circumstances, a chronic condition for which the defendant is not expected to recover reasonably may be found to be serious and substantially diminish the ability of the defendant to provide self-care within the correctional institution, even if that condition would not have constituted an extraordinary and compelling reason absent the risk of COVID-19. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

*Extraordinary and Compelling Reasons*

The defendant is now 41 years old and is serving a statutory mandatory minimum sentence of 240 months at the Federal Correctional Institution (FCI) in Butner, North Carolina. The defendant began his term of incarceration on March 8, 2012, and he is scheduled to be released in April 2029.

The defendant sets forth several medical conditions which he claims increases his risk of suffering from several illness if he contracts the COVID-19 virus. Specifically, the defendant contends he suffers from diabetes, obesity, and high blood pressure. The defendant has provided sealed copies of some of his medical records which this court has carefully reviewed. In addition, the government has provided more than 200 pages of the

defendant's medical records from the BOP for a period of time from January to December 2019 as well as the BOP Sentry Report regarding the defendant's disciplinary data (ECF No. 265-1, sealed).

The government has responded and suggests that the defendant's medical ailments are well-controlled and do not present any impediment to his ability to provide self-care in the institution. His diabetes and high blood pressure are being treated with medication and his medical condition is appropriately managed at the facility. Thus, the government argues that the defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(1)(A).

The government sets forth a comprehensive discussion of the strenuous measures the BOP is taking to protect the health of the inmates in its charge and to mitigate the risks of COVID-19. In late December 2020, BOP facilities began receiving initial allotments of COVID-19 vaccines. According to the BOP, as of August 3, 2021, it has distributed more than 194,000 vaccines and administered more than 205,728 of them.[4]

For the above reasons, the court determines that the defendant has failed to show that his diabetes, obesity, or high blood pressure substantially diminish his ability to provide self care against serious injury or death as a result of COVID-19. As a result, the court finds that the defendant has not provided an extraordinary and compelling reason for compassionate

---

[4] Information regarding the BOP's administration of the COVID-19 vaccine is available at https://bop.gov/coronavirus/. As of the date of this order, FCI Butner Medium has 7 inmates who have tested positive for COVID-19, but no positive staff members. FCI Butner Low has no inmates who have tested positive, but has 3 staff members who have tested positive.

release on this basis.

*The Defendant's Family Circumstances*

The defendant next submits that his wife and former caregiver of his minor son has died and he is the only available caregiver for his child. It appears the defendant is relying upon U.S.S.G. § 1B1.13, cmt. n.C, which allows motions of this nature for family circumstances. The defendant contends that the mother of his minor child has died and he seeks compassionate release to care for the child. In his motion, the defendant asserts that his son is 15 years old and that the child's mother died from sickle cell anemia. Although the defendant does not state when the child's mother died, a letter from the defendant's Aunt, Takiya Anderson (ECF No. 254) (filed in support of the defendant's motion for release), asserts that the child's mother died when the child was 4 years old — which was almost 12 years ago. The government also notes that the defendant was arrested for the current charges in 2012 which means that his son's mother died *prior to* the defendant's arrest. As a result, the government contends that defendant is not the only caregiver.

This court agrees with the government that the defendant has failed to establish an extraordinary and compelling reason for a reduction or release on a family situation basis.

III. PROCEDURAL HISTORY

On December 19, 2012, a superseding indictment was filed charging the defendant with conspiracy to possess with the intent to distribute 500 grams or more of cocaine and 280 intent to distribute a quantity of cocaine base, in violation of 21 U.S.C. § 841(a)(1); and

10

two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Pursuant to 21 U.S.C. § 851, the government filed an Information notifying the defendant that he was subject to enhanced penalties based upon his three prior convictions for possession of crack cocaine, possession with intent to distribute crack cocaine (first), and possession with the intent to distribute crack cocaine (second) (ECF No. 89).

On August 13, 2013, the defendant pleaded guilty pursuant to a written plea agreement (ECF No. 118) to the drug conspiracy charge in Count 1. As part of his plea agreement, the government agreed withdraw two of the three sentencing enhancements under § 851. With only one felony drug conviction now applied, the defendant faced a statutory minimum of 20 years and a maximum of life under 21 U.S.C. § 841(b)(1)(A).

The U.S. Probation Office prepared a Presentence Report (PSR) (ECF No.133). The PSR determined the defendant's offense level at 37[5] and his criminal history category at V. This yielded a guideline range of 324 to 405 months.

At the defendant's November 25, 2013 sentencing, the court varied to a 1:1 cocaine to crack ratio which reduced the defendant's sentence to the statutory minimum sentence of 20 years. The court sentenced the defendant to 240 months imprisonment, and a term of supervised release of ten years.

---

[5] The PSR determined that the defendant's offense level was 36 plus 2 levels for possession of a dangerous weapon, plus 2 levels for recklessly creating a substantial risk of death, yielding a total offense level of 40 minus 3 levels for acceptance of responsibility.

The defendant filed an appeal, however, the Fourth Circuit Court of Appeals affirmed the defendant's conviction and the mandate was issued on February 4, 2015. *See United States v. Riley*, 586 Fed. Appx. 188 (4th Cir. 2014).

On September 9, 2019, the defendant filed a motion to reduce his sentence due to extraordinary circumstances pursuant to 18 U.S.C. § 3582(c)(1). The defendant claimed that he saved the life of a fellow inmate who overdosed and went into a coma. This court denied the motion stating that because the Director of the Bureau of Prisons had not made the motion on the defendant's behalf, this court was without authority to grant such request. (ECF No. 226).

On June 1, 2020, the district court in the EDNC granted the defendant's request to construe his § 2241 petition as a motion seeking relief under 18 U.S.C. § 3582(c)(1)(A). The NC district court then transferred the matter to this court in the District of South Carolina and the clerk here assigned the case civil action number 4:20-2048-JFA-TER.

In keeping with the defendant's request to construe his motion as one under § 3582 and not a separate civil action for a writ under § 2241, the court directed the Clerk to file the defendant's original § 2241 petition from C/A No. 4:20-2048 (which was transferred from the EDNC) as one under § 3582 in his criminal case, CR No. 3:12-251. That motion is pending before this court and will be addressed in a separate order.

On June 16, 2020, the defendant filed a motion (ECF No. 230) requesting home detention due to compassionate release pursuant to 28 U.S.C. § 3582(c)(1)(A). The court

12

denied that motion without prejudice (ECF No. 236) because the defendant had not exhausted his administrative remedies with the BOP.

*Post-Sentencing Conduct and Mitigating Evidence*

Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of his or her 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011). On a motion to reduce sentence under the First Step Act, a district court must consider the defendant's post-sentencing conduct. *See United States v. McDonald*, 986 F.3d 402 (4th Cir. Jan. 22, 2021).

The defendant was sentenced on November 25, 2013 and his projected release date is April 13, 2029. In his motion, he states under his proposed release plans that he intends to sell clothes with his father and get a job at Home Depot, while staying with his father or Auntie. As of May 27, 2020, the defendant had not had any disciplinary reports in the last 6 months. The listed educational courses included pre-industrial sewing, three GED courses, intramural code of conduct, and drug abuse education. Commendably, the defendant earned his GED while at the BOP. He also began a work assignment with UNICOR/Prison Industries Enterprise in November 2019.

Finally, the government opposes the defendant's alternative request for an order directing the BOP to transfer him to home confinement under the CARES Act because the court lacks statutory authority to do so.[6] This court agrees and will deny relief on this basis.

---

[6] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in
(continued...)

IV. CONCLUSION

After carefully considering the applicable law, the arguments of the parties, and the record before it, the court concludes that the defendant has not met his burden of establishing that he has an extraordinary and compelling reason such that he is eligible for release under § 3582(c)(1)(A). As the court finds no extraordinary and compelling reason, it is not necessary for the court to address the § 3553(a) factors.

Accordingly, the defendant's motion (ECF No. 194) is respectfully denied.

IT IS SO ORDERED.

August 4, 2021
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

⁶(...continued)
home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. *See* CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

14