IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:12-251-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| HAFAN ANTONIO RILEY | ) | |
| _____ | ) | |

Since 2019, the defendant has filed several motions seeking release from incarceration under the compassionate release provisions of the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A). In a Memorandum Opinion and Order dated August 4, 2021 (ECF No. 286), this court determined that the defendant's motion for compassionate release relating to his medical conditions and family circumstances (ECF No. 251) did not indicate a finding that the defendant had shown extraordinary and compelling reasons for his release.[2] The defendant's appeal of this court's decision was affirmed by the Fourth Circuit Court of Appeals on December 27, 2021.[3]

The defendant returns to this court with additional motions for compassionate release (ECF Nos. 298, 302, 309), once again arguing that his medical conditions justify his release, that he saved another inmate's life, and that he is the only surviving parent of his child whose mother passed away.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

[2] This court also denied the defendant's motion for reconsideration of the order denying compassionate relief (ECF No. 292).

[3] *See United States v. Riley*, No. 21-7347.

In his newest motions, the defendant also contends that if sentenced today, his sentence would be substantially different as a result of the First Step Act and intervening changes in federal sentencing law. He asserts that there is a sentencing disparity and erroneous classification that warrants a sentence reduction to time served.

The government has responded in opposition, arguing that the defendant has not shown extraordinary and compelling reasons for release, and that the defendant's arguments regarding a sentencing disparity and changes in sentencing law are without merit. The government further asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motions for compassionate release are respectfully denied in part and granted in part.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

2

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (I) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under

3

§ 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any

4

extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf.  The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).  *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

In its response (ECF No. 308), the government discusses the legal framework for exhaustion, but does not specifically raise whether or not the defendant has exhausted those remedies.  The defendant states that he has exhausted his remedies and has provided copies of his requests and the written denial of the Warden.  Thus, it appears the defendant has exhausted his administrative remedies and this court will proceed to consider the motion on its merits.

DISCUSSION

5

I.   *The Defendant's Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release.  However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release.  If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

The defendant avers that he has several medical conditions which increase his risk of suffering from severe illness if he contracts the COVID-19 virus. Specifically, the defendant says that he suffers from diabetes, obesity, high cholesterol, and high blood pressure.  Neither the defendant nor the government has provided copies of any of the defendant's medical records for the present motions.  However, the court docket contains sealed copies of the

6

defendant's BOP medical records from 2019 that were provided in relation to the defendant's first motion for compassionate release (ECF No. 265-1, sealed).

The government argues that although the defendant presents the risk factors of obesity and diabetes, the defendant was offered a vaccine, initially declined it, then received his first dose of the Pfizer vaccine in November 2021. Thus, the government contends that the defendant no longer presents an extraordinary and compelling medical reason that could warrant his release. In its response, the government sets forth a comprehensive discussion of the strenuous measures the BOP is taking to protect the health of the inmates in its charge and to mitigate the risks of COVID-19.

As noted earlier, on August 2, 2021, this court denied the defendant's first motion for compassionate release as it related to his medical conditions, finding no extraordinary and compelling reasons for release. On August 31, 2021, the Fourth Circuit Court of Appeals issued an unpublished opinion in *United States v. Youngblood* determining that threshold questions in compassionate release motions relating to medical issues are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

In light of *Youngblood*, it now appears that the defendant's medical conditions of obesity and diabetes could potentially make him vulnerable to becoming seriously ill from COVID-19 and thus would demonstrate an extraordinary and compelling reason for

7

consideration of his immediate release based on his medical conditions.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors, and also with particular review of the defendant's post-sentencing conduct while incarcerated.

*Factors Under 18 U.S.C. § 3553(a)*

1. *Nature and Circumstances of the Offense.* The defendant was identified as a member of a conspiracy to distribute crack cocaine in the Columbia area of South Carolina. In September 2011, the defendant attempted to flee from deputies with the Richland County Sheriff's Department and admitted he had borrowed the car he was driving for a payment of a quantity of crack cocaine after his arrest. He also admitted he was in possession of a firearm at the time of the traffic stop.[4]

After the defendant was arrested by federal authorities in March 2012—during which time investigators seized items consistent with the distribution of crack cocaine and a firearm—the defendant detailed his drug trafficking activities and advised that he had been supplied by numerous individuals from 1996 until the date of his arrest. Additionally, the defendant admitted he always carried a firearm with him while distributing crack cocaine.

---

[4] While involved in drug distribution, the defendant was carrying a firearm and attempted to flee from the police. During the pursuit, the defendant's speed exceeded 100 mph including violently striking another car in the rear that caused the other car to cross over the intersection and came to rest at a gas station. The defendant's car continued, striking several fences before coming to rest after striking a house. Even then, the defendant attempted to flee from the police while the passenger in the car with him was injured. The defendant admitted that he ran from the police because he had a gun in the car along with crack cocaine and that he did not have a driver's license.

With regard to the instant federal case, the defendant was the sole individual named in a 4-count Superseding Indictment filed in the District of South Carolina in December 2012, charging the following crimes:

Count 1:    Conspiracy to possess with intent to distribute and distribution of 500 grams or more of a mixture containing cocaine and 280 grams or more of a mixture containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851;

Count 2:    Possession with intent to distribute and distribution of a quantity or substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c); and

Counts 3, 4:    Felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and 924(e).

The government filed an Information (ECF No. 89) pursuant to 21 U.S.C. § 851 notifying the defendant that he was subject to increased penalties based on 3 prior state felony convictions for drug offenses.[5]

The defendant was determined not to be a Career Offender under U.S. Sentencing Guideline (U.S.S.G.) § 4B1.1 since these prior state convictions were considered to be relevant conduct to the instant federal offense and were cited by the government in its § 851 Information which enhanced the defendant's statutory exposure.

The defendant pleaded guilty, pursuant to a written amended plea agreement to Count

---

[5] Those convictions were: (1) arrest on 04/15/1997 for possession of crack cocaine (SC 97-GS-40-22168), convicted 12/15/1997 and sentenced to 5 years suspended and 3 years probation; (2) arrest on 05/30/1998 arrest for possession with intent distribute crack cocaine, 1st offense  (SC 99-GS-40-32427), convicted 09/14/2000 and sentenced to 5 years, $2,500 fine, concurrent; and (3) arrest on 03/30/1999 arrest for possession with intent distribute crack cocaine, 2nd offense (SC 99-GS-32-3145), convicted 05/18/2000 and sentenced to 5 years concurrent.

1 referenced above (ECF No. 118).  As part of his plea agreement, the government agreed to withdraw 2 of the 3 sentencing enhancements under § 851.  With only 1 felony drug conviction applied, the defendant now only faced a statutory minimum of 20 years and a maximum of life under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), rather than a life sentence.[6]

The Presentence Report (PSR) (ECF No. 133), calculated the defendant's total offense level at 37[7], with a criminal history category of V.  This yielded a Guideline range of 324 to 405 months.  The PSR indicated that the defendant was held accountable for 3.1575 kilograms of crack cocaine (or 3,157.50 grams) for Guideline sentencing purposes to establish his base offense level Guideline.

At the defendant's November 25, 2013 sentencing (and the government having withdrawn all but one of his prior enhancements), the court followed its usual practice of addressing the sentencing disparity between cocaine and crack cocaine and varied to a 1:1 cocaine to crack ratio.  This had the effect of lowering the defendant's base offense level by 3 levels from the otherwise applicable Guideline range  to 29 (the criminal history category remained at V), to produce a Guideline range of 140 to 175 months.  However, the 240-

---

[6] According to the Information, the possible penalties for a conviction under 21 U.S.C. §§ 841(a)(1), (b)(1)(B) — in a case involving less than 5 kilograms, but 500 grams or more of cocaine and one or more prior felony drug convictions — a minimum term of imprisonment of 10 years and a maximum term of life imprisonment, no probation, no parole, a fine of $8,000,000 and a term of supervised release of at least 8 years in addition to any term of imprisonment, plus a special assessment of $100.  The possible penalties listed in the amended Plea Agreement reflect the same.

[7] The PSR determined that the defendant's base offense level was 36, plus 2 levels for possession of a dangerous weapon, plus 2 levels for recklessly creating a substantial risk of death, yielding an offense level of 40, minus 3 levels for acceptance of responsibility, for a total offense level of 37.

10

month mandatory minimum sentence under § 841(b)(1)(a) trumped the Guideline range of 140 to 175 months.  Thus, the court sentenced the defendant to 240 months imprisonment, and a 10-year term of supervision.

The defendant filed an appeal of his conviction challenging the denial of his motion to suppress, the adequacy of his plea hearing, the validity of his prior convictions used to determine his statutory sentencing range, and the reasonableness of his sentence.  The Fourth Circuit affirmed the conviction and sentence on December 2, 2014.[8]

The defendant thereafter moved to reduce his sentence in light of U.S.S.G. Amendment 782,[9] which this court denied as not applicable.  The court noted that the defendant had already received a variance at sentencing for the crack and cocaine disparity. Moreover, the defendant's amended Guideline range (after applying a 2-level reduction provided for in Amendment 782) would have been 262 to 327 months, which was greater than his original 240-month sentence.

In October 2016, the defendant filed his first motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255, raising claims of ineffective assistance of counsel and asserting

---

[8]  *United States v. Riley*, 586 Fed. App'x 118 (Mem) (4th Cir. 2014).

[9]  Section 3582(c)(2) provides that when a defendant's sentencing range has been lowered by the Sentencing Commission under the Guidelines pursuant to 28 U.S.C. § 994(u), the court may reduce the term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a), and if such a reduction is consistent with the applicable policy statements of the Sentencing Commission. Retroactive Amendment 782 lowers the base offense level for certain drug offenses.

that U.S.S.G. Amendment 794 should be applied retroactively to his sentence. Specifically, the defendant challenged counsels' failure to communicate a plea deal and failure to move to suppress. This court found no merit in the defendant's claims and granted summary judgment to the government (ECF No. 201).

On June 16, 2020, the defendant filed a motion under 28 U.S.C. § 2241. As the government notes, the defendant changed his mind and sought to have that motion considered under 18 U.S.C. § 3582(c)(2).[10] The court filed the document as ECF No. 232.

The defendant has received credit for time served on his 240-month sentence since March 8, 2012 and is currently scheduled to be released in April 2029. He is housed at Low Security Institution in Butner, North Carolina.

2. *History and Characteristics of the Defendant.* A review of the defendant's criminal history showed that he has numerous felony convictions for drug offenses including possession of cocaine, 1st offense; possession with intent to distribute crack cocaine, 1st offense; and two counts of possession with intent to distribute crack, 2nd offense.

---

[10] In a June 2020 order (ECF NO. 231), this court granted the defendant's motion to construe his § 2241 petition (originally filed in the Eastern District of North Carolina and transferred to the District of South Carolina), as a motion seeking relief under 18 U.S.C. § 3582(c)(1)(A). The government then filed a motion for summary judgment arguing that the § 2241 petition was actually challenging his conviction and should be considered as a motion under 28 U.S.C. § 2255. In his § 2241 petition, the defendant claims he is innocent of the § 851 statutory penalty increase to his sentence. He claims he is actually innocent of the 10-year statutory penalty which is based upon the "aggregated drug quantities instead of the discrete quantities as required by the § 841(b) directives." The defendant claims that "if there is a federal investigation ongoing for the same offenses (in this case drug conspiracy) then all relevant conduct must be included, including the prior arrest, drug quantities and time serves on these relevant conduct provisions and no points may be assigned nor may an enhancement be applied for these relevant conduct actions." (ECF No. 232-1). This motion has been dismissed in a contemporaneously filed order.

The defendant was determined not to be a Career Offender under U.S.S.G. § 4B1.1 since these prior state convictions were considered to be relevant conduct to the instant federal offense. However, these prior felony drug convictions were cited by the government in its § 851 Information which enhanced the defendant's statutory exposure to a mandatory minimum sentence of life, and which was further reduced to a mandatory minimum sentence of 240 months after the government agreed to remove 2 of the 3 prior felony drug convictions.

In addition to the prior felony drug convictions mentioned above, the defendant has previous convictions for resisting arrest; instigating, aiding, or participating in riot; 6 counts of driving without a license, 1st offense; possession of stolen vehicle, $1,000.00 to $5,000.00; simple assault and battery; unlawful carrying of pistol; possession of stolen pistol; 4 counts of simple possession of marijuana; 2 counts of failure to stop for police command; driving under the influence; and driving under suspension.

The defendant is 42 years old, single, and has 3 children born from relationships with three women. He has lived in the Columbia, South Carolina his entire life. He was employed by his father's clothing business since he was a child.

*Post Sentencing Conduct*

Commendably, the defendant earned his GED while incarcerated at the BOP. He has had only one disciplinary action while incarcerated for fighting over the television, and has not had any disciplinary infractions in the last 6 years. He has taken educational courses in pre-industrial sewing, three GED courses, intramural code of conduct, and drug abuse

13

education.  He also began a work assignment with UNICOR/Prison Industries in November 2019.

The defendant contends that he has received over 500 hours of programming, has been a positive role model for younger inmates, has no public safety factors, is rehabilitated, has fulfilled his obligations, has kept a job to better himself for society, and that his kids need him.

He also states that if released he will get a job at Home Depot and sell clothes with his father.  He says that he has strong family ties, is not a threat to the public, and is serving a non-violent drug charge.  Finally, the defendant provides a copy of a letter from the Warden dated September 10, 2021, wherein the Warden documents that in October 2020, the defendant performed life saving measures on a fellow inmate and provided information to special investigators rendering the confiscation of illicit drugs, cell phones, and other contraband.

3.  *Seriousness of the Crimes*.  As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*.  The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5.  *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*.  The court finds that a significant sentence is necessary to provide both general and specific

14

deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion.

7. *Need to Avoid Unwarranted Disparity.* Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

## II. *The Defendant's Family Circumstances*

The defendant again submits that his wife and former caregiver of his minor son has died and he is the only available caregiver for his child. It appears the defendant is relying upon U.S.S.G. § 1B1.13, cmt. n.C, which allows motions of this nature for family circumstances. The defendant contends that the mother of his minor child has died and he seeks compassionate release to care for the child. In his motion, the defendant asserts that his son is 16 years old and that the child's mother died from sickle cell anemia.

Although the defendant does not state when the child's mother died, a letter from the defendant's Aunt, Takiya Anderson (ECF No. 254) (filed in support of the defendant's motion for release), asserts that the child's mother died when the child was 4 years old — which was almost 12 years ago. The government also notes that the defendant was arrested for the current charges in 2012 which suggests that his son's mother died *prior to* the defendant's arrest. The defendant's children were without their mother at the time that the

15

defendant committed the serious crimes recited above. As a result, the government contends that defendant is not the only caregiver.

This court agrees with the government that the defendant has failed to establish an extraordinary and compelling reason for a reduction or release based on his family situation.

### III. *Changes in Sentencing Law*

The court will now address the legal arguments advanced by the defendant in his current motion for compassionate release. The defendant contends that he is serving an illegal sentence which rises to the level of an extraordinary and compelling reason to reduce his sentence to time served. He relies on U.S.S.G. Amendment 782, the First Step Act, and intervening changes in sentencing law. In particular, the defendant cites to *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), *United States v. Dillman*, 2021 WL 3083034 (ED Va. 2021) and *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2000).

### *Challenge to § 851 Enhancement*

As noted previously, at his initial criminal proceedings in 2012, the defendant was served with an Information notifying him that he would be subject to a sentencing enhancement under 21 U.S.C. § 851. In his amended plea agreement (ECF No. 118), he stipulated that he had at least 3 prior felony drug convictions. In Paragraph 10 of the Plea Agreement, the government agreed to remove 2 of the 3 prior convictions, leaving 1 conviction to enhance the defendant's sentence for statutory purposes. This withdrawal was contingent upon the defendant's cooperation and compliance with the plea agreement provisions and in lieu of a motion for a downward departure pursuant to U.S.S.G. § 5K1.1.

16

A. *Scope of the Conspiracy*

The defendant first states that his § 851 enhancement is improper because all 3 prior state convictions cited (including the remaining 1 state conviction) were in the scope of the federal conspiracy and because § 841(b)(1)(A) applies when the instant offense is committed *after* the prior felony conviction. He argues that his prior enhancing convictions should not be used to enhance his sentence since they occurred during the time the federal conspiracy occurred and were considered part of his relevant conduct. As such, if he was sentenced today with no § 851 enhancements, he would face a mandatory minimum sentence of 120 months rather than 240 months.

The defendant relies on *United States v. Dillman, Jr.*, 2021 WL 3083034 (W.D. Va. 2021). In *Dillman*, the defendant's 3 prior convictions were used as predicate offenses for a career offender designation, not for an § 851 enhancement. That case is therefore not applicable.

The government contends that the defendant's argument is erroneous. The government states that the defendant's Superseding Indictment charged that the conspiracy started at least by January 1996 and continued up to December 2012, the date of the Superseding Indictment (ECF No. 78).

With regard to the 3 prior felony drug convictions, the government notes that the defendant's state conviction for possession of cocaine, 1st offense, occurred on April 15, 1997. He was sentenced on December 15, 1997, his parole was revoked in 2000, he was sentenced to 3 years, and he remained in prison until March 1, 2004. (ECF No. 133 at ¶38).

17

The defendant's conviction for possession with the intent to distribute crack cocaine, 1st offense, occurred on May 30, 1998. He was sentenced to 5 years on September 14, 2000. He was released from custody on March 1, 2004. (ECF No. 133 at ¶ 39).   On March 30, 1999, the defendant was charged with possession with the intent to distribute crack cocaine, 2nd offense. He was sentenced on May 18, 2000 to 5 years, 30 day suspended sentence.  His community supervision expired on February 28, 2006.   (ECF No. 133 at ¶ 42).  Thus, the government argues that all of the defendant's convictions were completed or final by February 28, 2006, thus making the § 851 enhancement proper in the defendant's federal criminal case.

At his guilty plea hearing, the government provided evidence showing that the defendant continued in the conspiracy after his release from state prison.  The defendant admitted that he continued to distribute drugs after 2004. The government also proffered evidence that other witnesses admitted that they dealt crack cocaine and cocaine with the defendant after 2004.

The PSR included evidence that the conspiracy continued after 2006 as the defendant admitted to distributing crack cocaine and cocaine with others well after 2006 up to and including in 2012 (ECF No. 133 at ¶¶ 25, 26, 27, 28).  Thus, the government argues that because the conspiracy for which the defendant was convicted continued well after his prior convictions became final, those prior convictions were properly considered prior convictions for purposes of enhancing his sentence.  The government submits that this same issue was raised in *United States v. Smith*, 451 F. 3d 209 (4th Cir. 2006), wherein the Court held that

18

when a defendant is convicted of a drug conspiracy under 21 U.S.C. § 846, prior felony drug convictions that fall within the conspiracy period may be used to enhance the defendant's sentence if the conspiracy continued after his earlier convictions were final. *Id*. at 225, see also, *United States v. Howard*, 115 F.3d 1151, 1158 (4th Cir. 1997).   Consequently, the government asserts that the defendant is in error and thus, this issue does not rise to the level of extraordinary and compelling.   The court agrees with the government's position. *Smith* is on point and fatal to the defendant's argument regarding his § 851 enhancement.

   B. *Section 846 and US v. Norman*

   The defendant also argues that *United States v. Norman*, 395 F.3d 232 (4th Cir. 2019) impacts his Guideline sentence.  He claims that under *Norman*, the Fourth Circuit ruled that a § 846 conspiracy is not a controlled substance offense so that his Guideline range would be 120 to 150 months including the 2-level reduction allowed under Amendment 782.

    *Norman* dealt with a defendant sentenced as a career offender under the Guidelines. The defendant in this case was not sentenced as a career offender.   Thus, *Norman* is unavailing to the defendant.

   C. *First Step Act Changes to Mandatory Minimum Sentence*

   Finally, the defendant states that the First Step Act changed the mandatory minimum sentence for a conviction under § 841(b)(1)(A) so that the 20 year mandatory minimum is now 15 years (180 months) if a defendant has only 1 prior serious drug felony conviction. Such that his sentence should be only 180 months, not 240 (based on the prior § 851 enhancements before the First Step Act).   In this respect, the defendant is correct that if he

19

were sentenced today, he would have faced a mandatory minimum sentence of 180 months instead of 240 months. The First Step Act changed the mandatory minimum sentence for § 841(b)(1)(A) charges. Under the old law, a defendant with 1 valid predicate offense was subject to a 20-year mandatory minimum. But under the law as it exists today after the First Step Act, a defendant with one valid predicate is subject to a 15-year mandatory minimum. As noted previously, the defendant originally had 3 previous felony drug convictions used in support of his § 851 enhancement. However, the plea agreement provided that the government would withdraw 2 of the 3 enhancements at sentencing.

The defendant's original Guidelines (taking into account two 2-level enhancements, a 3-level reduction for acceptance of responsibility, and a 1:1 crack cocaine variance) was 140 to 175 months. But because of the mandatory minimum of 240 months, the Guideline sentence with one prior predicate offense (the other 2 having been removed by the government in exchange for the defendant's cooperation as stipulated to in the plea agreement), the Guidelines became the 240 month mandatory minimum sentence. This was the sentence imposed by the court. If sentenced today, the 180-month minimum would still overrule the lower range of 140 to 175 months and thus be the applicable sentence.

Thus, if the defendant were sentenced today, he would face a lower mandatory minimum sentence under the law. This does not, however, mean that the defendant is automatically entitled to relief. This court retains the discretion to determine if a sentence modification is appropriate. As the court's recitation of the § 3553(a) factors indicates, the offenses at issue here were very serious. Moreover, the defendant's criminal history category

20

of V correctly reflects that he has a series of serious offenses on his record. This court is fully aware of, and has taken careful consideration of, the defendant's post sentencing conduct while incarcerated. Thus, a full reduction of the 5-year difference in sentencing laws is unwarranted.

However, on the record before it, the court determines that a slight reduction in the defendant's sentence is appropriate. The court will reduce the defendant's sentence by 12 months, resulting in a new sentence of 228 months. This reduction is based on the following:

1. The fact that defendant's mandatory minimum sentence would be lower if the defendant were sentenced today.[11]

2. The fact that the defendant saved the life of another inmate while incarcerated.

3. The § 3553(a) factors addressed above counsel against any further reduction.

### IV. *Request for Home Confinement*

To the extent the defendant seeks to have this court direct the BOP to place the defendant in home confinement, however, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General.

---

[11] This court is fully aware that *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) authorizes a court to reduce a defendant's sentence, on a compassionate release motion, to account for changes in sentencing laws that are expressly declared by Congress to be non-retroactive. In *McCoy*, the court "unstacked" successive § 924(c) sentences, resulting in a dramatic reduction in the sentences imposed in those cases. The circumstances of the defendants in *McCoy* were significantly different from those presented here (the *McCoy* defendants had virtually no criminal records, they were in their early 20s when the crimes were committed, and a substantial (30 year) "bump" in the sentence was due to the stacking regime then in place). These differences account for the fact that the court has reduced the defendant's sentence by 1 year, instead of 5 years.

See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g).  The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this.  See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of § 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

## CONCLUSION

The court has done a careful and thorough investigation of the record, and an individualized assessment of the §3553(a) factors, including the defendant's post-sentencing conduct discussed herein.  As noted earlier in this order, the court determines that the defendant has demonstrated an extraordinary and compelling reason for compassionate release.

For the foregoing reasons, the defendant's motions (ECF Nos. 298, 302, 309) are granted in part and denied in part.  The custodial sentence of the defendant's sentence is reduced to 228 months.  All other aspects of the original sentence remain in place.

The defendant's motion to expedite is now moot (ECF No. 310).

IT IS SO ORDERED.

August 11, 2022                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                     United States District Judge

22